UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

TY HARRIS,

    Plaintiff,

    v.

CHARLES H. RAMSEY, CHIEF,
District of Columbia Metropolitan
Police Department, *et al.,*

    Defendants.

Case No. 1:06-cv-0638-RJL

Hearing Requested

PLAINTIFF'S OPPOSITION TO DEFENDANTS
DISTRICT OF COLUMBIA'S AND CHIEF
CHARLES RAMSEY'S MOTION TO DISMISS

Plaintiff Ty Harris, through counsel, respectfully submits this opposition to the motion to dismiss of the District of Columbia and Chief Charles Ramsey. Mr. Harris has filed a dismissal of Chief Ramsey in his official capacity as to all counts of the Complaint and in his individual capacity as to the Third Cause of Action of the Complaint: Negligent Training and Supervision. (Complaint at ¶¶ 33-40). The Defendants' arguments for dismissing Chief Ramsey for negligent hiring, training and supervision based on: (1) absolute immunity, (2) lack of either employer/employee or principal/agent relationship, and (3) the identical nature of the claims against the District of Columbia are moot.

Mr. Harris does not dismiss the 42 U.S.C. § 1983 (§ 1983) claim against Chief Ramsey in his individual capacity.

Second, as to the § 1983 claim, alleging only one incident of police misconduct does not, at the motion to dismiss stage, require dismissing the claim for failure to prove an affirmative

link between the municipal policy and that instance of unconstitutional conduct.  City of

Oklahoma City v. Tuttle, 471 U.S. 808, 824 (1985).  The Supreme Court has rejected a

heightened pleading standard in civil rights cases alleging municipal liability under § 1983.

Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit, 507 U.S. 163, 164

(1993).

Mr. Harris' allegations concerning an unconstitutional practice, custom and policy are

similar to those that this Court found sufficient in a previous decision.  Amons v. District of

Columbia, 231 F.Supp. 2d 109, 114 (D.D.C.  2002).  Amons also ruled that a plaintiff, at the

pleading stage, need not name a policy-making official concerning the unconstitutional practice,

custom and policy.   Id. at 115.

Lastly, the Court should not dismiss the § 1983 claim against the District of Columbia.

First, the established rule concerning a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) is

that the court must adopt a liberal reading of the complaint.  The court cannot dismiss the

complaint unless "it appears beyond doubt that the plaintiff can prove no set of facts in support of

his claim which would entitle him to relief."  Conley v. Gibson, 355 U.S. 41, 45-46 (1957).

Moreover, Conley rejected a requirement that a plaintiff must provide, in the complaint, "specific

facts" to support "general allegations."  Id. at 47.

This Court should not dismiss the § 1983 claim.  Plaintiff Harris respectfully requests a

hearing on this motion to dismiss.

## I. PRELIMINARY STATEMENT.

On July 20, 2004, at approximately 9:00 p.m., Ty Harris was driving on Wisconsin

Avenue, N.W., near Massachusetts Avenue, N.W., in Washington, D.C., when Metropolitan

Police Department (MPD), Officer Jeffery K. Tolliver stopped Mr. Harris.  (Complaint at ¶ 8).

Officer Tolliver walked over to the driver's side of the car, stared at Mr. Harris for some time,

then drew his gun and pointed it at Mr. Harris.  <u>Id</u>. at ¶ 10.

    While pointing the gun at Mr. Harris, Officer Tolliver screamed, "Let me see your

motherfucking hands bitch!  Get out of the fucking car!  Get out!  Keep your fucking hands up."

<u>Id</u>.  Mr. Harris had done nothing to provoke Officer Tolliver.  <u>Id</u>. at ¶ 11.

    Mr. Harris followed Officer Tolliver's order and got out of the car.  <u>Id</u>. at 12.  Officer

Tolliver stood approximately six feet away from Mr. Harris and pointed the gun at Mr. Harris'

head.  <u>Id</u>.  Mr. Harris was afraid because he believed the Officer Tolliver was out of control and

would shoot him.  <u>Id</u>.

    Officer Tolliver then yelled, "Move to the fucking back of the car!  Put your hands on the

trunk!"  <u>Id</u>. at ¶ 13.  Mr. Harris complied with this order.  <u>Id</u>.  Officer Tolliver then called for

backup.  <u>Id</u>.  He then processed Mr. Harris' driver's license while continuing to scream at Mr.

Harris and pointing the gun at Mr. Harris' back.  <u>Id</u>.

    Soon after Officer Tolliver called for backup, approximately ten or more police cars

arrived and surrounded Mr. Harris' car.  <u>Id</u>. at ¶ 14.  All of the officers got out of their cars and

two of them questioned Mr. Harris about the stop.  <u>Id</u>.  Mr. Harris said the he did not know why

Officer Tolliver pulled him over.  In response, one of the officers screamed, "What do you mean

you don't know!  Why did you get pulled over?"  <u>Id</u>.  Mr. Harris repeated that he did not know

the reason for the stop.  <u>Id</u>.

    Officer Tolliver then holstered his gun and questioned Mr. Harris about whether or not he

had a weapon.  Mr. Harris said that he did not.  <u>Id</u>. at ¶ 15.  Officer Tolliver then asked if Mr.

Harris had something in his car under the seat.  Mr. Harris said no.  Officer Tolliver said, "So I'm not going to find nothin' under your seat?"  Mr. Harris continued to answer no, but Officer Tolliver kept warning him that there better not be anything under the seat.  Officer Tolliver accused Mr. Harris of putting something under his seat.  Id.

Officer Tolliver searched the car with his flashlight.  The only item in the car was an empty plastic bag from a local Fresh Fields grocery store.  Id. at 16.

Following the search, Officer Tolliver informed Mr. Harris that he could sit in his car.  Mr. Harris chose to remain where he was.  Id. at 17.  Officer Tolliver then talked with the other officers and four or five officers encircled Mr. Harris.  Id.  Officer Tolliver asked Mr. Harris what was in his pocket.  Mr. Harris responded by pulling out an elastic jogging bandage for his knee and throwing it on the top of his trunk.  Id.  Officer Tolliver said that they would let him go in a few minutes.  Id.

Officer Tolliver continued to question Mr. Harris about what the latter had under his car seat.  Mr. Harris again responded that he had nothing under the seat.  Id. at ¶ 18.

Officer Tolliver said that he pulled Mr. Harris over because allegedly someone in another car had told him to check under Mr. Harris' seat.  Officer Tolliver never identified this individual.  Id.

Mr. Harris asked Officer Tolliver if he always pulled out his gun and point it in people's faces.  Another officer yelled that doing so was for protection.  Id. at ¶ 19.  Mr. Harris also asked if the officers normally cursed at drivers they pulled over.  The officers ignored this question.  Id.

Mr. Harris asked Officer Tolliver for the latter's full name and badge number.  Officer Tolliver gave Mr. Harris his initials and badge number but refused to show Mr. Harris his

identification.  Officer Tolliver told Mr. Harris that he was under no duty to show him

identification.  <u>Id</u>. at ¶ 20.

The officers eventually permitted Mr. Harris to leave.  <u>Id</u>. at ¶ 21.  Mr. Harris shook with

fear, anger and embarrassment as he drove away from the scene.  To this day, he feels threatened

and scared of the police.  <u>Id</u>.

## II.  MOTION TO DISMISS STANDARD.

Contrary to Defendants' representation by citing the rule about a motion to dismiss under

Fed. R. Civ. P. 12(b)(6) in the negative, <u>Conley v. Gibson</u>, 355 U.S. at 41, mandates a liberal

reading of a complaint in the plaintiff's favor.  As the Supreme Court there stated:

> In appraising the sufficiency of the complaint we follow, of course,
> the accepted rule that a complaint should not be dismissed for
> failure to state a claim unless it appears beyond doubt that the
> plaintiff can prove no set of facts in support of his claim which
> would entitle him to relief.

<u>Id</u>. at 45-46.

<u>Conley</u> also rejected a requirement that a plaintiff must provide "specific facts" to support

"general allegations."  <u>Id</u>. at 47.

> ... the Federal Rules of Civil Procedure do not require a claimant to
> set out in detail the facts upon which he bases his claim.  To the
> contrary, all the Rules require is "a short and plain statement of the
> claim ... that will give the defendant fair notice of what the
> plaintiff's claim is and the grounds upon which it rests. ...  Such
> simplified "notice pleading" is made possible by the liberal
> opportunity for discovery and the other pretrial procedures
> established by the Rules to disclose more precisely the basis of
> both claim and defense and to define more narrowly the disputed
> facts and issues.

<u>Id</u>. at 47-48.

<u>Conley</u> concluded:

> The Federal Rules reject the approach that pleading is a game of
> skill in which one misstep by counsel may be decisive to the
> outcome and accept the principle that the purpose of pleading is to
> facilitate a proper decision on the merits.

<u>Id</u>. at 48.

<u>Haynesworth v. Miller</u>, 820 F.2d 1245, 1254 (D.C. Cir. 1987), *overruled on other*

*grounds by* <u>Hartman v. Moore</u>, 126 S.Ct. 1695 (2006), directed that:

> Motions such as these, that would summarily extinguish litigation
> at the threshold and foreclose the opportunity for discovery and
> factual presentation, should be treated with the greatest of care. ...
> A motion to dismiss should be granted only when it appears
> beyond doubt that, under any reasonable reading of the complaint,
> the plaintiff will be unable to prove any set of facts that would
> justify relief.

Lastly, <u>Kowal v. MCI Communications Corp.</u>, 16 F.3d 1271 (D.C. Cir. 1994), also

supports denying the motion to dismiss.  The court there stated:

> The complaint should not be dismissed unless plaintiffs can prove
> no set of facts in support of their claim which would entitle them to
> relief. ...  To that end, the complaint is construed liberally in the
> plaintiffs' favor, and we grant plaintiffs the benefit of all inferences
> that can be derived from the facts alleged.

<u>Id</u>. at 1276.

### III.  ARGUMENT.

#### A.  Mr. Harris Has Sufficiently Alleged a Policy, Practice and Custom Giving Rise to the Injury from the Invalid Traffic Stop and Search.

The Complaint, in keeping with <u>Monell v. Dep't. of Social Serv.</u>, 436 U.S. 685, alleged in

the count concerning the deprivation of 42 U.S.C. §1983 rights that Officer Tolliver's and the

other MPD officers' stop of Mr. Harris and the search of the car is a custom, practice and policy

of Defendant District of Columbia and Chief Ramsey.  Specifically, the Complaint alleged:

> 26.  As demonstrated by the facts, Officer Tolliver and the other District of Columbia Metropolitan Police Department Officers did not have probable cause to pull over Mr. Harris.  Officer Tolliver pulled a gun on Mr. Harris while screaming at him in violation of his rights under Title 42, U.S.C. § 1983.

> 27.  At all relevant times related to the circumstances described in this Complaint, the District of Columbia and MPD Chief Charles Ramsey, individually and officially, were under a duty to properly train, supervise, investigate and correct improper actions of MPD officers to protect the public and prevent civil rights violations.

> 28.  The District of Columbia, and Chief Ramsey recklessly and without regard for the rights of others, breached their duties to properly train, supervise, investigate and correct the improper actions of their employee police officers.

> 29.  The acts and omissions by Defendants District of Columbia, and Chief Ramsey constitute policies or customs that caused the injuries Mr. Harris sustained.

> 30.  The District of Columbia's and Chief Ramsey's disregard for the rights of others, in particular those of Mr. Harris, was the direct and proximate cause of the injuries Mr. Harris sustained.

> 31.  As a result of the District of Columbia's and Chief Ramsey's failure to act, Mr. Harris suffered deprivation of his Constitutional and civil rights under Title 42, U.S.C. § 1983.

These allegations are sufficient for purposes of overcoming a motion to dismiss under

Fed. R. Civ. P. 12(b)(6) and fall within the standards the court enunciated in the above decisions

concerning motions to dismiss.

Contrary to Defendants' argument, Mr. Harris' alleging only one incident of police

misconduct does not, at the motion to dismiss stage, require dismissing the claim for lack of

proving "an affirmative link between the [municipal] policy and the particular constitutional

violation alleged." <u>City of Oklahoma City v. Tuttle</u>, 471 U.S. at 824. <u>Tuttle</u> does not control this case. First, <u>Tuttle</u> dealt with a jury verdict after a full trial on the plaintiff's § 1983 claim against a municipality. <u>Id</u>. at 813. The Court in <u>Tuttle</u> discussed the showing of just one violation and whether there was a sufficient nexus between a city policy in that context. Here, however, the action has just begun. The parties have not yet engaged in discovery.

Second, in <u>Leatherman</u>, 507 U.S. at 164, the Supreme Court rejected the Fifth Circuit's requirement of a heightened pleading standard in civil rights cases alleging municipal liability under §1983. <u>Leatherman</u> reversed a decision granting a motion to dismiss in an action arising out of two separate forcible entries into two homes by local law enforcement officers. The <u>Leatherman</u> Court explained that, "The stated basis for municipal liability under <u>Monell</u> ... was the failure of the municipalities [among other defendants] to adequately train the police officers involved." <u>Id</u>. at 165.

The Defendants in <u>Leatherman</u> had claimed that, "To establish municipal liability under §1983, ... a plaintiff must do more than plead a single instance of misconduct." <u>Id</u>. at 167. The Fifth Circuit adopted what the Supreme Court described as "a more demanding rule for pleading a complaint under §1983 than for pleading other kinds of claims for relief." <u>Id</u>. The Supreme Court quoted the Fifth Circuit's explanation of the heightened pleading standard:

> In cases against government officials involving the likely defense
> of immunity we require of trial judges that they demand that the
> plaintiff's complaints state with factual detail and particularity the
> basis for the claim which necessarily included why the defendant-
> official cannot successfully maintain the defense of immunity.

<u>Id</u>. <u>Leatherman</u> noted that in subsequent cases, the "Fifth Circuit extended this rule to complaints against municipal corporations asserting liability under §1983." <u>Id</u>.

-8-

The Supreme Court found that this heightened pleading standard:

> was impossible to square ... with the liberal system of "notice pleading" set up by the Federal Rules.  Rule 8(a)(2) requires that a complaint include only "a short and plain statement of the claim showing that the pleader is entitled to relief.

Id. at 168.  The Court then cited to Conley v. Gibson, which explained that:

> The Federal Rules of Civil Procedure do not require a claimant to set out in detail the facts upon which he bases his claim.  To the contrary, all the Rules require is a "short and plain statement of the claim" that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests."

Id.    The Leatherman Court then advised that summary judgment and discovery were the means through which to weed out unmeritorious claims "sooner rather than later."  Id. at 168-69.

Given Leatherman, this Court should not dismiss the §1983 claim against the District of Columbia and Chief Ramsey at this point in the proceedings.  The Defendants, like the Fifth Circuit, argue for a heightened pleading standard which runs contrary to Leatherman, Conley and Fed. R. Civ. P. 8.  The Court must permit the parties to engage in discovery before it determines that Mr. Harris cannot substantiate his claim that Officer Tolliver's and the other MPD officers' actions concerning the stop and search arise from a policy, practice or custom of the District of Columbia and Chief Ramsey.  After discovery, the Defendants can file a motion for summary judgment if they consider that the Monell allegations in the Complaint lack merit.

The Defendants also cite Triplett v. District of Columbia, 108 F.3d 1450 (D.C. Cir. 1999), to support their argument that a "single instance of unconstitutional activity" cannot create Monell liability against a municipality.  (Defendants' Memorandum at 11).

Triplett, however, does not stand for this proposition.  Rather, Triplett found no municipal custom or policy concerning use of excessive force against inmates at the District of

Columbia's Occoquan [Prison] Facility in Lorton, VA, because the correctional officers covered

up their illegal treatment with false disciplinary reports.  As the result of the cover-up, the policy

makers had no idea that such conduct was taking place.  Id. at 1453.

The Defendants argue that Rule 12 (b)(6) dismissal is proper because Mr. Harris alleged

only a "discrete incident," the traffic stop and the search of Mr. Harris' car.  The Defendants also

point out that Mr. Harris does not "prove that policy makers of the District of Columbia knew or

should have known there existed a longstanding and wide spread practice of failing to properly

train, supervise, investigate and correct actions of employee officers that led to plaintiff's

injuries." (Defendants' Memorandum at 11).  In support of this argument, Defendants cite

Campbell v. City of San Antonio, 43 F.3d 973 (5th Cir. 1995), and Jones v. City of Chicago, 856

F.2d 985 (7th Cir. 1988).  Neither of these cases mandate dismissing Mr. Harris' complaint.

In Campbell, the Fifth Circuit dismissed the action because the plaintiff did not allege a

municipal policy or custom.  Rather, as the court explained:

> The claims against the City rest on her allegations that the City
> negligently failed to correct the mistaken identification or to
> prevent such a mistake from occurring in the first place. Campbell
> has not asserted any facts, however, indicating that her alleged
> deprivation of constitutionally protected rights was the result of an
> official policy or custom.

43 F.3d at 977.  It was in this context of alleged negligence that the court indicated that,

"'Isolated violations are not the persistent, often repeated constant violations that constitute

custom and policy' as required for municipal section 1983 liability."  Id.  Moreover, unlike in the

instant case, the police officer in Campbell arrested the plaintiff pursuant to a grand jury

indictment.  Id.  at 974.

-10-

Mr. Harris will prove that Officer Tolliver pulled him over and subjected his car to a search without any probable cause, which is a custom, practice and policy of the District of Columbia Police Department.

As the above language from the Complaint demonstrates, Mr. Harris alleged a municipal policy or custom underlying Officer Tolliver's and the other MPD officer's unconstitutional actions toward Mr. Harris. Unlike the plaintiff in Campbell, Mr. Harris is not merely alleging negligence on the District of Columbia's part.

Further, Jones v. City of Chicago does not require dismissal. The Seventh Circuit in that case discussed municipal liability in an appeal from a jury verdict finding, among other things, that the city of Chicago's permitting the police department to maintain clandestine files on suspects amounted to a custom. 856 F.2d at 995-96. The "department-wide" and "long-standing" nature of these secret files also led the court to determine that the jury was "entitled to conclude that [the secret files] had been consciously approved at the highest policy-making level for decisions involving the police department ...." Id. at 996. Dismissing the instant complaint at this early stage of the proceeding would preclude Mr. Harris from proving, as did the plaintiff in Campbell, that a city policy or custom exists leading to Officer Tolliver's and the other MPD officers' actions against Mr. Harris.

Amons v. District of Columbia, 231 F.Supp. 2d at 109, provides precedent for finding that Mr. Harris need not "prove" in the Complaint that policy makers in the District of Columbia knew of a policy or custom of failing to properly train, supervise, investigate and correct the illegal actions of Officer Tolliver and the other MPD officers.

In <u>Amons</u>, the court denied the District of Columbia's and MPD officers' motion to dismiss a complaint for claims arising from the officers entering and searching the plaintiff's home without permission or a warrant. During the search, the officers also shot and killed the plaintiff's dog. 231 F.Supp. 2d at 110-11. In stating the standard for surviving a motion to dismiss, the <u>Amons</u> court relied upon <u>Conley v. Gibson</u> and <u>Leatherman</u>. <u>Id</u>. at 113.

The defendants in <u>Amons</u> claimed that the plaintiff's complaint did not allege that a municipal policy or custom caused the § 1983 violation. <u>Id</u>. at 114. The Court found that the plaintiff's allegations in the complaint that the District of Columbia had tolerated and permitted a pattern and practice of unconstitutional police action sufficient to defeat the motion to dismiss. Likewise, the above-cited portions of Mr. Harris' Complaint, like those in <u>Amons</u>, adequately allege a municipal custom or policy.

<u>Amons</u> also addressed the need to name a defendant with policymaking authority to sustain a §1983 claim against the District. The defendants in <u>Amons</u> claimed that <u>Triplett</u> mandated that a plaintiff had to name an official with policymaking authority in the complaint. The <u>Amons</u> court rejected this argument, stating:

> Triplett does not stand for the proposition that a plaintiff, ***at the pleading stage***, must name a policymaking official in his complaint ***because the complaint "need not allege all that a plaintiff must eventually prove."*** ... Thus, the Court concludes that dismissal for plaintiff's failure to name a person in a policy-making position as bearing some culpability for what happened to him as alleged in his complaint would be inappropriate.

<u>Id</u>. at 115-16. (Emphasis added).

-12-

Amons rejected the argument that "one incident of police misconduct is insufficient to

support a §1983 claim ...." Id. In so doing, the court relied upon a circuit court decision,

Atchinson v. District of Columbia, 73 F.3d 418, 423 (D.C. Cir. 1996), which concluded that:

> ... [the plaintiff's] complaint is adequate even though it alleges
> only one instance of unconstitutional conduct.

Atchinson also noted that:

> ... section 1983 does not require a plaintiff .... to prove multiple
> instances of misconduct if the plaintiff can prove an
> unconstitutional municipal policy responsible for a single instance
> of misconduct.

Amons, 231 F.Supp 2d at 116.

Amons further explained that Atchinson "construed the Supreme Court's ruling in

Leatherman to be 'inconsistent' with 'a multiple-incident pleading requirement ....' " Id.

The Amons court refused to dismiss the §1983 claim. Id. This Court should follow the

Amons decision and deny the motion to dismiss.[1]

---

[1] The Defendants' comparison of Daskalea v. District of Columbia, 227 F.3d 433 (D.C. Cir. 2000), to this action is irrelevant. As in other decisions the Defendants rely upon for their motion to dismiss, Daskalea went up on appeal after a jury verdict based upon evidence produced during trial. Daskalea did not concern, as here, a motion to dismiss at the outset of the case. As discussed above, Amons disposes of Defendants' "single incident" argument and the claim that Mr. Harris must allege that an official with policy-making authority knew about the actions of Officer Tolliver and the other MPD officers.

-13-

**CONCLUSION**

In light of the foregoing, this Court should deny the Defendants' motion to dismiss.

Respectfully submitted,

December 22, 2006

_____/s/_____
James R. Klimaski, #243543
Lynn I. Miller, #941559
Klimaski & Associates, P.C.
1819 L Street NW
Suite 700
Washington, D.C. 20036
202-296-5600
Klimaski@Klimaskilaw.com
Miller@Klimaskilaw.com

***Counsel for Plaintiff***